UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SALLY TOMON,

                                 Plaintiff,

            v.                                            3:05-CV-1157
                                                         (LEK/GJD)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

PETER A. GORTON, ESQ., for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

      Plaintiff filed an application for disability insurance benefits on December 8, 2003, alleging disability beginning June 9, 1998.  (Administrative Transcript ("T."), 60-62).  The claim was denied initially, and plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on December 13, 2004 by video conference between Harrisburg, Pennsylvania and Binghamton, New York.  Plaintiff and a vocational expert testified at the hearing  (T. 169-222).

      In a decision dated March 11, 2005, the ALJ found that plaintiff was not

disabled.  (T. 17-24).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 4, 2005.  (T. 4-6).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ erred in evaluating the treating physician's opinion (Plaintiff's Brief at 4)(Dkt. No. 8);

(2) The ALJ erred in not commenting on, and totally ignoring the opinion of Dr. Dhillon (Plaintiff's Brief at 8);

(3) The ALJ erred in assessing plaintiff's credibility (Plaintiff's Brief at 9);

(4) This case should be reversed for the payment of benefits (Plaintiff's Brief at 13).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

## FACTS

1. <u>**Non-Medical Evidence and Testimony**</u>

Plaintiff, who was fifty-four years old on the date she was last insured (March 31, 2002) (T. 17, 169), has a General Equivalency Diploma (GED), and is thus considered to have a high school education. (T. 17).  Plaintiff had past work experience as a light fixture service worker, fast food worker, bakery worker, sales

representative, and customer services representative. (T. 17, 18).  At the hearing, plaintiff's counsel stated that plaintiff was claiming disability from June 9, 1998.  (T. 172, 60-62).  According to plaintiff, June 9, 1998 is the date when Dr. Brosnan gave her a note for temporary disability.  (T. 175-77).  Plaintiff received Workers' Compensation benefits for a temporary disability between September 1997 and January 1998. (T. 177).  Plaintiff returned to work between January 1998 and June 9, 1998, but has not worked since.  (T. 177, 175).

There is a discrepancy between the date that plaintiff used before the Commissioner as the onset of disability and the onset date claimed in plaintiff's brief to this court.  In her disability application and in her testimony at the hearing, plaintiff alleged that she became disabled on ***June 9, 1998***. (T. 60-64, 171-75).  However, her brief to this court alleges an onset date of ***September 4, 2001***.

During her testimony, plaintiff stated that she has no problems with the English language, and described the type of work she did as a lighting technician, bakery worker, short order cook, and sales representative. (T. 179-83).  Plaintiff stated that she was unable to lift more than five pounds, nor could she use her arms repetitively. (T. 187).  She stated that she experienced pain which went up through her neck into her face, and that her face became numb.  (T. 187).  Plaintiff stated that she had trouble sleeping, and always had problems with pinched nerves in her neck. In addition to numbness in her face, plaintiff testified that two of her fingers in each

hand became numb.  (T. 190).  Plaintiff stated that she had pain most of the time, and could only work for approximately fifteen minutes before experiencing pain. Plaintiff stated that she could cook meals, perform light housekeeping and laundry, but could not use a vacuum cleaner. (T. 192).  Plaintiff stated that she soaked in a tub to alleviate her shoulder pain three or four times each day.  (T. 192).  Plaintiff further stated that if she uses her arm repetitively for more than fifteen minutes, she experiences very severe pain in her neck and face, experiences numbness, and cannot concentrate.  According to plaintiff, she did everything at a much slower pace, and she took extensive rest breaks after fifteen minutes of activity. (T. 197).  Plaintiff claimed disability because of her neck, shoulder, rotator cuff, and the combination of those conditions.  (T. 173).

## 2.  __Medical Evidence__

### A.  Dr. John Brosnan - Lourdes Hospital

On January 8, 1999, Dr. John Brosnan performed arthroscopic surgery on plaintiff's shoulder to repair a partial tear in plaintiff's rotator cuff.  (T. 105-09).  The "Report of Operation" states that although the M.R.I. had suggested a "partial undersurface tear," there was no tear visualized.  (T. 105).  Dr. Brosnan repaired a lesion in plaintiff's shoulder.

4

### B.  Dr. Eric Seybold - United Health Service Hospitals

On December 7, 2001, plaintiff had an MRI[1] on her cervical spine.  (T. 120).

The MRI report states that plaintiff had a bulging disk, and posterior endplate

osteophyte formation C4-5 and C5-6.  The report also stated that there was a "mild

right neural canal stenosis at C5-6 due to uncovertebral joint hypertrophy."  (T. 120).

Dr. Seybold reviewed the MRI report on January 8, 2002. (Dkt. No. 119).  Dr.

Seybold's report states that plaintiff was complaining of significant neck, arm, and

right shoulder pain.  Dr. Seybold stated that he believed cervical facet blocks at C4-5

and C5-6 would give plaintiff relief. *Id.*  Dr. Seybold also stated that if plaintiff

obtained moderate relief from the injections, it would also help to determine whether

surgery would be appropriate to stabilize plaintiff's "mechanical symptoms."  (T.

119).  Dr. Seybold administered the cervical facet joint injections on February 25,

2002.  (T. 117).

### C.  Dr. Kamlesh S. Desai - Orthopedic Associates

Plaintiff began seeing Dr. Desai on September 13, 2000. (T. 124-25).  In Dr.

Desai's September 13, 2000 report, he states that plaintiff had surgical management

and physical therapy for her right shoulder, and that her shoulder symptoms were

"stabilized." (T. 125).  Plaintiff's shoulder symptoms were "still present, but were

being treated by Dr. Brosnan."  Dr. Desai stated that plaintiff complained of

---

[1] Magnetic Resonance Imaging (MRI) test.

"ongoing pain" in her neck and right trapezius muscle. (T. 125).  The pain radiated into her right arm, and she was complaining of numbness in her right hand involving her ring and little finger.  (T. 125).  On examination, Dr. Desai found tenderness in plaintiff's right trapezius muscle along the supraclavicular region near the C6-7 levels of her spine. (T. 125).  Plaintiff had limited cervical spine motion, with limited extension, and limited rotation.  According to Dr. Desai, a June 1998 MRI showed a "right-sided herniation of the disc at C5/C6." (T. 124).  Dr. Desai recommended a physical therapy program, with special attention to plaintiff's neck.  (T. 124).

Plaintiff returned to Dr. Desai two months later on November 16, 2000. (T. 123).  Dr. Desai's diagnosis was cervical syndrome with right radiculopathy, secondary to disc herniation C5-6.  Dr. Desai also diagnosed a rotator cuff injury involving her right shoulder from March of 1997. *Id.*  Dr. Desai recommended Vioxx, and physical therapy, including exercises for plaintiff's shoulder and neck. (T. 123).

Plaintiff visited Orthopedic Associates three times during 2002, on April 15, September 30, and November 15, 2002.  (T. 168, 167, 166).  During the April 15, 2002 visit, plaintiff complained of significant neck and bilateral arm symptoms. (T. 168).  Plaintiff stated that the injections did not provide any lasting improvement, and she was continuing to use Darvocet. (T. 168).  Plaintiff stated that because of her significant neck and arm pain, she was unable, to sit, stand, walk or perform simple

activities. *Id.*  According to plaintiff, her symptoms had become worse. *Id.*  The examining physician[2] found limited range of motion in plaintiff's cervical spine, and a certain movement produced pain in plaintiff's right shoulder.  The physician requested authorization from Workers' Compensation for an anterior cervical diskectomy at C4-5 and C5-6, with fusion and plating. *Id.*  The physician further sought authorization for a "shoulder AC joint resection and decompression of the subacromial space."  (T. 168).

Plaintiff was again examined by Dr. Desai on September 30, 2002, and complained of neck and shoulder pain with limited motion of her neck and shoulder, and difficulty sleeping at night. (T. 167).  Dr. Desai diagnosed right shoulder impingement syndrome, osteoarthritis of the AC joint in her right shoulder, and multi-level disk degeneration with right radiculopathy. *Id.*  Dr. Desai stated that plaintiff's current status was **"*permanent total disability.*"**  (T. 167)(emphasis added).  Dr. Desai prescribed physical therapy for plaintiff's neck and shoulders, twice a week for six weeks, including range of motion and strength exercises.  He also prescribed an anti-inflammatory medication. *Id.*

Plaintiff returned to Dr. Desai on November 15, 2002, with the same complaints about her neck and shoulders. (T. 166).  She also stated that she was having difficulty sleeping. *Id.*  Plaintiff also stated that her "day to day activities

_____

[2] It is unclear from the record who the examining doctor was on April 15, 2002. (T. 168).

[were] quite difficult." (T. 166). In the November 15, 2002 report, Dr. Desai

***corrected his previous report of September 30, 2002***, and stated the following:

> Correction for the dictation that was done on 9/30/02 where it was listed as permanent total disability - ***that is an error***. The patient's current status is temporary total disability secondary to neck and right shoulder problems.

(T. 166) (emphasis added). Dr. Desai noted that plaintiff had not yet started physical therapy, but was doing exercises at home, and that her pain management has not been very satisfactory because of plaintiff's difficulty with the pain medications. *Id.* Dr. Desai recommended taking different medications, changing dosages, and avoiding activities using plaintiff's shoulders and arms. (T. 166).

Plaintiff returned to Dr. Desai on February 18, 2003 complaining of a significant amount of neck and shoulder pain, with difficulty reaching, pulling, pushing and lifting. (T. 164). Plaintiff complained of difficulty with any overhead activities. (T. 165). Dr. Desai found that range of motion of the cervical spine was "limited and painful." *Id.* He also found that shoulder motion including abduction and rotation were painful. Plaintiff complained of difficulty swallowing, and Dr. Desai requested authorization for an ENT surgical consultation. Dr. Desai continued a gentle exercise program for plaintiff's shoulder and cervical spine, in addition to prescribing Tylenol with Codeine. (T. 165).

Plaintiff returned to Dr. Desai on April 8, 2003 complaining of neck and shoulder pain, plus difficulty with swallowing. (T. 164). Plaintiff continued to have shoulder pain, but it was not interfering with her sleep. On examination, Dr. Desai

found restricted neck and shoulder motion, and found pain with certain movements.
Dr. Desai recommended avoidance of certain activities, plus continued use of
medication. *Id.* On November 11, 2003, Dr. Desai wrote a note "To Whom It May
Concern" and repeated his standing diagnosis. He then stated that plaintiff "has not
been able to get back to any gainful employment secondary to persistent neck and
upper extremity symptoms." (T. 163).

Dr. Desai specified plaintiff's restrictions which included avoidance of
overhead activities, excessive pushing, pulling, or lifting, and avoidance of activities
that would produce excess pain to her cervical spine. (T. 163). He also placed
restrictions on the use of her shoulder, including avoidance of heavy pushing,
pulling, lifting, and overhead activities. *Id.* Dr. Desai stated that all of the
restrictions are "on a permanent basis." (T. 163).

The record shows that plaintiff was examined by Dr. Desai on July 15, 2004.
(T. 159). Dr. Desai repeated the same diagnosis as previously stated and found that
plaintiff's status was "permanent total disability" (T. 159). His report states that
plaintiff continued to complain about pain from any overhead activities involving her
right shoulder, and also complained of pain in both arms. *Id.* Dr. Desai found
restricted range of motion, and that certain movements reproduced plaintiff's pain in
certain muscle groups. Dr. Desai recommended ongoing conservative treatment,
including gentle range of motion exercises. (T. 159).

The record contains a questionnaire that plaintiff states was answered by Dr.
Desai in March of 2004. (T. 148-51). In this questionnaire, Dr. Desai commented

that plaintiff's condition involves pain in her neck and shoulders, numbness in her ring and little fingers, weakness and tenderness in her neck and shoulder. (T. 148). Dr. Desai stated that plaintiff's condition could "reasonably" cause moderate to marked fatigue, and marked to severe pain. (T. 148). Dr. Desai stated that plaintiff was not capable of returning to sedentary work full-time, and would "most likely have a significant number of absences." (T. 149).

In response to a question that assumed plaintiff returned to **"repetitive work activity allowing for a sit/stand option"** (T. 149), Dr. Desai stated that plaintiff would need rest periods of one-half to one hour every three to four hours and that, in addition, plaintiff would require rest periods involving lying down for "substantial periods of time." (T. 149). Dr. Desai stated that plaintiff could lift only five pounds, and that her concentration, consistency of work ability, and ability to sustain work pace and stamina were all "poor." (T. 151). Dr. Desai finally stated that plaintiff had been prescribed several medications, including cortisone, Vioxx, Trazadone, Darvocet, and ibuprofen. (T. 151). Dr. Desai stated that most of these medications produced significant G.I. symptoms, and allergic reactions. (T. 151). Dr. Desai concluded by stating that the "time frame" for plaintiff's condition is from September 4, 2001 to March 4, 2004. (T. 151).

### D.  Dr. Robin K. Dhillon - Independent Medical Examination

On January 12, 2004, Dr. Dhillon examined plaintiff in Ohio and prepared a report for plaintiff's Ohio Workers' Compensation. (T. 155-57). After reciting plaintiff's history of medical procedures on her right shoulder, Dr. Dhillon stated that

plaintiff complained of continuous pain on the right side of her neck, which radiated down to her right shoulder and into her right hand. (T. 156). Plaintiff complained of extensive numbness in her right neck, shoulder, arm, and hand. *Id.* According to plaintiff, daily activities increased her pain, and she was extremely limited in many activities involving her arms and hands. Dr. Dhillon's examination found tenderness in plaintiff's shoulder, certain positive tests and limitation of movement in both extension and abduction. Dr. Dhillon also found limited range of motion involving plaintiff's cervical spine. (T. 156). Based upon her physical examination and a review of plaintiff's medical records, Dr. Dhillon concluded that plaintiff was permanently and totally impaired for the purposes of her Ohio Workers' Compensation claim. (T. 157).

## DISCUSSION

### 1.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate area
> in which he lives, or whether a specific job vacancy exists for [her], or

whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents her from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence

supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)

(citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may

not affirm an ALJ's decision if it reasonably doubts whether the proper legal

standards were applied, even if the decision appears to be supported by substantial

evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial

factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d

582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the

decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Williams on behalf of*

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be

"more than a scintilla" of evidence scattered throughout the administrative record.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co.*

*v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence

must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.

However, a reviewing court cannot substitute its interpretation of the administrative

record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

**3.      Treating Physician's Rule and Substantial Evidence**

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is ***not*** required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The less consistent the treating physician's opinion is with the record as a whole, the less weight it will be given. *Temple v. Astrue*, 07-CV-6346, 2008 U.S. Dist. LEXIS 3185, *19 (W.D.N.Y. April 17, 2008)(citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).  The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.*  An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

In this case, plaintiff argues that by failing to give proper weight to of Dr. Desai's opinion, the ALJ violated the treating physician rule.  (Plaintiff's Brief, 4-7). Plaintiff's insured status expired on March 31, 2002.  Although plaintiff argues that the ALJ did not give proper weight to Dr. Desai's opinion, plaintiff does not cite any

opinion of Dr. Desai that finds plaintiff totally disabled *prior to* the expiration of

plaintiff's insured status.  Rather, plaintiff points to Dr. Desai's opinion in March

*2004*, which retrospectively finds that plaintiff was incapable of work, since

"9/4/2001." (T. 151).  The problem with this argument is that Dr. Desai's opinions

are *inconsistent*, and his contemporaneous notes during 2001 and 2002 do *not* state

that plaintiff was disabled as of September 4, 2001.

      The form that Dr. Desai completed in 2004 was sent to Dr. Desai by plaintiff's

counsel, and the questions on the form were prepared by plaintiff's counsel.  This

opinion need not be given the same weight as Dr. Desai's *contemporaneous opinion*

which is supported by contemporaneous office notes, particularly when the 2004

form is inconsistent with the contemporaneous reports.  Although the 2004 report

states that plaintiff could not work "40 hr/wk" because she would have a "significant

number of absences" and would have to rest "½-1hr every 3-4 hrs," there was never

any indication in Dr. Desai's contemporaneous office notes that plaintiff would be so

restricted.  The court also notes that the "treating physician rule" does *not* apply to

opinions regarding residual functional capacity or to opinions of "ultimate

disability," which are issues reserved to the Commissioner. *Taylor v. Astrue*, CV-07-

3469, 2008 U.S. Dist. LEXIS 46619, *7-8 (E.D.N.Y. June 17, 2008)(citing 20 C.F.R.

§ 404.1527(e)).

      On November 15, 2002, almost eight months after plaintiff's insured status

expired, Dr. Desai, found that plaintiff's current status was "temporary total

disability." (T. 166).  As stated above, Dr. Desai *specifically corrected his*

***September 30, 2002 opinion***, and specifically stated that plaintiff was ***not*** permanently, totally disabled.  Even assuming that Dr. Desai could make that finding, it is clear that Dr. Desai's records are ***not*** consistent with his retrospective opinion, and the ALJ was not obligated to give Dr. Desai's retrospective opinion controlling weight.

Plaintiff's counsel points to M.R.I. examinations, and other specific findings, arguing that these medical findings support Dr. Desai's opinion.  Plaintiff's counsel is requesting that this court engage in formulating a medical opinion, which this court is not authorized to do.  It is the responsibility of the ALJ, not the court, to weigh conflicting evidence. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

In addition to arguing that the ALJ improperly rejected Dr. Desai's opinion, plaintiff argues that the ALJ erred in "totally ignoring" Dr. Dhillon's ***2004*** opinion of that plaintiff was totally disabled for Workers' Compensation in ***Ohio***.  Dr. Dhillon examined plaintiff once, and is not a treating physician for purposes of the Social Security Act.  It is also clear from Dr. Dhillon's opinion that she is specifically commenting on plaintiff's Workers' Compensation claim, and specifically finding plaintiff permanently disabled for purposes of Workers' Compensation.

The test for Social Security disability is not the same as disability under Workers' Compensation laws, and a physician's opinion of disability for purposes of Worker's Compensation is not binding on the Commissioner. *Malark v. Barnhart*, 06-CV-700, 2008 U.S. Dist. LEXIS 33006, *45 (N.D.N.Y. April 22, 2008).  Dr. Dhillon, whose report was rendered in ***January 2004***, clearly finds plaintiff disabled

from her ***previous work***, involving almost exclusively overhead movements under Workers' Compensation standards.  Since Dr. Dhillon's report was rendered long after plaintiff's insured status expired, she is not a treating physician, and she is not rendering a retrospective opinion, the ALJ's failure to consider the report is not error.

**4.    Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

In this case, plaintiff argues that the ALJ's credibility determination is insufficient and erroneous. (Plaintiff's Brief, 9-10).  Plaintiff argues that the ALJ did not go through the analysis required by Social Security Ruling 88-13, and 20 C.F.R. § 404.1529(c)(3). (Plaintiff's Brief, 10).  In his opinion, the ALJ stated that plaintiff's "subjective complaints are out of proportion to the objective medical evidence." (T. 20).  The ALJ further stated that "the claimant completed her GED in 2001 . . . which would indicate that during the period of alleged disability, the

claimant's pain was not so severe as to interfere with her ability to concentrate and study." *Id.*

Plaintiff argues that the ALJ's finding is not supported by substantial evidence because Dr. Desai found plaintiff disabled in *September 2001*, and she completed her GED studies in *March of 2001*, she completed her G.E.D. *prior* to the onset of her disability. Plaintiff's argument in this regard is misplaced. It is clear that before the agency, plaintiff was alleging disability *as of June 1998*, while before this court she claims that she became disabled in September 2001. It is unclear when plaintiff changed her claim, but she cannot fault the ALJ's finding based on her argument that she obtained her GED before the onset of her disability.

Notwithstanding the plaintiff's slight error in argument, it is still unclear how the plaintiff's ability to obtain her GED would necessarily be inconsistent with her allegations of disabling pain. The ALJ states that during the time that plaintiff was obtaining her GED, her impairments did not impair her ability to "concentrate and study," however, plaintiff is claiming a physical impairment that would affect her ability to perform the *exertional* requirements of a particular category of work. The ALJ's use of the plaintiff's ability to obtain a GED does not support his finding that she her credibility regarding her physical pain is suspect.

Although the ALJ then points to medical findings that the ALJ believes are inconsistent with plaintiff's allegations of continuous pain, he does not have a basis for this statement. The ALJ cites medical findings from 1998, stating that these findings do not "substantiate the severity of residual effects alleged by plaintiff." (T.

20).  However, while the plaintiff was treating with Dr. Desai, her complaints were consistent and uniform about shoulder and arm pain, and/or numbness extending through her right arm to her right hand.  The ALJ recited that 1998 MRI showed disc herniation at C5-6, that plaintiff had shoulder surgery in 1999, and that in 2000, plaintiff was diagnosed with cervical spondylosis with right radiculopathy, secondary to disc herniation and rotator cuff injury. (T. 20).

The ALJ then stated that there were no treatment records between November 2000 and September 4, 2001. (T. 20).  The ALJ then recited specific clinical findings from 2001 that showed disc bulging and osteophyte formation. *Id.*  It is unclear how the ALJ made the conclusion that the degree of plaintiff's pain was not supported by the medical records.  There is no question that plaintiff has an "underlying condition" that could reasonably be expected to cause pain. 20 C.F.R. § 404.1529(b).  The regulations further require the ALJ to consider plaintiff's daily activities, the type and nature of the symptoms reported, the medications that she was taking, and any other measures she used to relieve the pain. 20 C.F.R. § 404.1529(c)(3).

Since the only non-medical basis for the ALJ's conclusion is not supported by substantial evidence, this court must find that the ALJ's rejection of plaintiff's complaints of pain is unsupported by substantial evidence.  While there may have been reasons to discount plaintiff's credibility, the ALJ did not analyze them properly under the regulations, and the court finds that the ALJ's partial rejection of plaintiff's credibility is not supported by substantial evidence.

**5.**   **Remand or Reversal**

Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Marcus v. Califano*, 615 F.2d 23 (2d Cir. 1979) (remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir. 1975).   Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Serv.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

Plaintiff argues that this court should order reversal for calculation of benefits. The law is clear that there must be persuasive evidence of disability before a District Court orders reversal for calculation of benefits.  On the record before this court there is ***no persuasive evidence of disability*** for Social Security purposes.  While it is clear from the record that plaintiff may not be able to perform her prior work utilizing her arm and shoulders, there is no persuasive proof in the record that plaintiff was unable to do ***any*** substantial, gainful activity prior to the expiration of her insured date.

Many of the retrospective opinions rendered by Dr. Desai are beyond his area of expertise.  As an orthopedic physician, he is not especially qualified to render opinions about plaintiff's concentration or work pace unless there are specific medical problems or medications that clearly impact on mental function, such as concentration or work pace.  The same rationale applies to Dr. Desai's retrospective opinions about plaintiff's rest periods during work.  His office notes clearly do not indicate any of those impairments, and in addition, his opinion about those impairments are beyond his expertise.

Finally, it appears that plaintiff has now changed her claim regarding the onset date of her disability.  Before the ALJ, plaintiff claimed that her disability began on June 9, 1998. (T. 18, 60, 84, 171, 172, 175).  Counsel now claims that plaintiff became disabled in 2001.  It is unclear whether plaintiff is abandoning the original onset date, and this is a matter that should be considered on remand.  This court, therefore, will not order reversal for calculation of benefits, but will order reversal and remand for further proceedings consistent with this recommendation.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**, and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this opinion, based on **Sentence Four** of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d

85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 20, 2008

Hon. Gustave J. DiBianco
U.S. Magistrate Judge